IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs June 27, 2017

## STATE OF TENNESSEE v. KIMBERLY REYNOLDS

**Appeal from the Criminal Court for Sullivan County**
**No. S65100     R. Jerry Beck, Judge**

_____

### No. E2016-01934-CCA-R3-CD

_____

Following the Defendant's, Kimberly Reynolds, guilty-pleaded convictions for one count of theft of property valued at $1,000 or more and six counts of obtaining a controlled substance by fraud, the trial court imposed a sentence of three years' incarceration for the theft charge and three years on community corrections for the fraud convictions to be served consecutively. Regarding her sentence of confinement, the Defendant appeals, arguing that she is a suitable candidate for alternative sentencing pursuant to the statutory considerations outlined in Tennessee Code Annotated section 40-35-103. Following our review, we affirm the trial court's alternative sentencing decision.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; and Terry L. Jordan, Assistant District Public Defender, for the Appellant, Kimberly Reynolds.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Gene Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Defendant in this case was employed as a nurse at Bristol Regional Medical Center, and this case arises from her improperly withdrawing drugs from medication

dispensers. On July 10, 2015, the Defendant was charged by information with one count of theft of property valued at $1,000 or more and six counts of obtaining a controlled substance by fraud. See Tenn. Code Ann. §§ 39-11-402; -14-103. The Defendant waived her right to indictment or presentment and entered a guilty plea on all seven counts. By agreement, the Defendant received a three-year sentence for her theft conviction and a three-year sentence for each of her convictions for obtaining a controlled substance by fraud. The convictions for obtaining a controlled substance by fraud were to run concurrently with each other but consecutively to the conviction for theft for a total effective six-year sentence. The trial court would determine the Defendant's manner of service.

Following the guilty plea in this case but prior to the sentencing hearing, the Defendant pled guilty in another case to one count of forgery, one count of leaving the scene of an accident, and one count of failing to use due care.[1] The Defendant received an effective sentence of two years for these convictions, which was to run consecutively with her convictions for theft and obtaining a controlled substance by fraud. Thus, the Defendant had a total effective sentence of eight years.

The sentencing hearing to determine the Defendant's manner of service proceeded as follows. At the beginning of the hearing, the trial court acknowledged the presentence report and noted several important factors. The Defendant was employed at Bristol Regional Medical Center as a nurse. The hospital's human resources manager in a victim impact statement, said that the Defendant did "not appear to be a truthful person" and that "even after the Defendant's resignation, the Defendant continued to attempt to defraud her former co-workers into giving her money for alleged cancer and detailed stories of her husband leaving her because she was dying." The "agency statement" of the pre-sentence report indicated that the Defendant had "a drug problem" and was ordered to pay restitution to the hospital in the amount of $1,094.73. The Defendant also had a record of criminal charges including: a "$50 fine out of the Bristol, Virginia General District Court"; "speeding"; and "allowing [a] dog to run at large." Regarding the Defendant's mental and physical health, the report indicated that it was "poor to fair" "due to a multitude of health problems." The report also stated that the Defendant suffered from "depression and obsessive compuls[ive] disorder." According to the report, the Defendant had an alcohol problem and "opiate abuse" problems. At the time of the presentence report, the Defendant was in "drug treatment and counseling."

Prior to the beginning of testimony, the prosecutor referred to the Defendant's plea agreement. As stipulated in the agreement, the Defendant pled guilty to six counts of

---

[1] We note that the judgment forms for these convictions are not included in the record on appeal.

obtaining a controlled substance by fraud, but she also stipulated that "483 times she diverted medication, controlled substances, from the dispensing system at Bristol Regional Medical Center."

The Defendant testified that she lived in Abingdon, Virginia, with her husband and grown children. The Defendant agreed that she illegally took Dilaudid from the Bristol Regional Medical Hospital, but she said that she never "deprived any patients of any medication." The Defendant explained that she took what was left after patients received their proper dosage. She said that she took drugs that would otherwise "be wasted." The Defendant said that her addiction to Dilaudid began "after it was prescribed to" her. She said that her nursing license was suspended and that she had not been able "to gain employment." The Defendant also admitted to having a problem with alcohol abuse and said that she attempted suicide. Following her suicide attempt, she was hospitalized at the "New River Valley Medical Center in Virginia." She agreed that she stayed in the hospital from December 23, 2015, to December 28, 2015, and was treated for "a history of depression, anxiety, major depressive disorder, [and] unresolved grief." The Defendant testified that she was taking several prescribed medications, but none of those were narcotics. The Defendant admitted that she was "an addict" but claimed that she "could pass a drug test." The Defendant stated that she was still seeing a psychiatrist and that she would continue to "go to meetings" regarding her drug and alcohol abuse.

On cross-examination, the Defendant agreed that she lied to her probation officer on multiple occasions. The Defendant confirmed that she repeatedly lied to the probation officer by telling the probation officer that her father had died and she was unable to report to the officer. The Defendant also confirmed that she told former co-workers that she had cancer. The Defendant agreed that while she was working in the emergency room "dealing with people who were coming in with medical emergencies," she was "under the influence of Dilaudid[.]" She confirmed that she injected herself with drugs "multiple times during the shifts while [she] was treating patients." The Defendant confirmed that on numerous occasions, she "went into the automatic medical dispensing system and fraudulently and falsely entered a patient, a doctor, and a dosage" in order to obtain drugs.

Following the arguments of counsel, the trial court imposed a sentence of three years for her theft conviction and a community corrections sentence for her convictions for fraudulently obtaining a controlled substance. This timely appeal followed.

ANALYSIS

On appeal, the Defendant takes exception to the trial court's complete denial of any alternative sentence regarding her conviction for theft of property valued at $1,000 or

more, arguing that she "is a favorable candidate for an alternative sentence" pursuant to the statutory criteria of Tennessee Code Annotated section 40-35-103. She notes that her addiction occurred "after being legally prescribed a drug[,]" she has no "serious prior criminal record[,]" she suffered from "mental problems[,]" and she has a "suspended license so that she does not have access to drugs[.]" Specifically, the Defendant argues that "the circumstances of her offense, her lack of significant criminal record, and [her] drug addiction" support her contention that she "meets all the eligibility requirements for community corrections as set out in [Tennessee Code Annotated section] 40-36-106(a)." The State responds that the trial court properly exercised its discretion when it ordered the Defendant to serve her three-year sentence in confinement based on her criminal history and lack of potential for rehabilitation. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's in-range sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Bise, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). However, no longer is any defendant entitled to a presumption that he or she is a

favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347. Tennessee Code Annotated section 40-35-102(6) is now only advisory. See Tenn. Code Ann. § 40-35-102(6)(D).

A trial court should consider the following when determining any defendant's suitability for alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

(A) Persons who, without this option, would be incarcerated in a correctional institution;
(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
(C) Persons who are convicted of nonviolent felony offenses;
(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
(F) Persons who do not demonstrate a pattern of committing violent offenses.

An offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. <u>State v. Ball</u>, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

In this case, the trial court identified the specific factors it considered in its decision:

> The Defendant, beyond any doubt is a drug addict.
>
> . . . .
>
> And has been a dope addict for a few years as compared with the first 44, 45 years she wasn't a problem. She did become addicted, and basically the world caved in on her. But nonetheless, she . . .
>
> Let's put it this way. I – I get a lot of these people through here. This is not an unusual event to have somebody addicted to drugs. Recently I had a male nurse from Bristol Memorial, Bristol's hospital. When he was arrested, he immediately got into drug treatment, got control of the program. I can't remember his name now. You may have been here when I did it. And he did everything you could expect somebody to do once he got charged and convicted. And he went through a help program through the licensing board, I believe. And even they came and testified or submitted a written statement.
>
> Now, after [the Defendant's] criminal activity became apparent, she met with her probation officer, did about everything she can think of to mislead the probation officer, which does not indicate she's wanting to get cured.
>
> Now, the [c]ourt is not a fool. I know there's an addiction problem. Now, how to address that.
>
> The law indicates that it's better to treat people than to incarcerate them and the court – judges are instructed not to put somebody in jail if they can be handled out of the jail situation. And somebody might point out in the past I've done it directly.
>
> But in this case what really concerns the [c]ourt, . . . is the fact she sent my probation officer on a roundabout, and did for some time. Wasn't just once, it was, well, multiple situations. She was injecting waste as

described in the statements or arguments or testimony. She continued to do so at a time she was working in the emergency room.

I think she does deserve some sentencing. I'm going to order her to serve her first three years. She will receive credit for all time served. Once she completes that sentence and is released, which will probably be about a – a year, 30% most likely[.]

. . . .

Okay. In [counts] 2 through 7 I'm going to place [the Defendant] on . . . a true community corrections sentence of three years, which is already consecutive under the plea agreement.

. . . .

When [the Defendant] gets out of prison, it'll be a residential program at the John R. Hay House residential community correction sentencing center. And she'll have to go through the residential program which is usually about six months. And they work with you. They have counselors there, drug specialists, and to help you defeat your [problem]. They also do things vocationally to try to get you back on [your] feet, get you employed, and things like that.

. . . .

That's the purpose of it. It's not perfect but at least it's a step forward.

Then generally, after six months being in the treatment program, you'll be released out on the street. And now on all your other cases where I've sentenced you, you'll be placed on regular probation on those cases.

But I want to emphasize I don't think she was truthful with me today . . . . [The prosecutor] asked her, "You do this? You do this?"

"I can't remember. I can't remember. I can't remember." Seeming like things you could remember.

But anyway, that's the reason for my ruling. I'm required to state into the record[.]

Upon review, we conclude that the trial court had more than substantial evidence to order the Defendant to serve her three-year sentence in confinement. The Defendant admitted to taking drugs from the hospital over 483 times and to being intoxicated while working with patients in the emergency room. After pleading guilty to one count of theft of property valued at $1,000 or more and six counts of obtaining a controlled substance

-7-

by fraud, the Defendant obtained and pled guilty to three new criminal charges. The Defendant repeatedly lied to her probation officer and she lied to her co-workers. Given these facts, confinement is necessary to avoid depreciating the seriousness of the offense. The trial court properly considered the sentencing principles in its alternative sentencing decision. Accordingly, the Defendant has failed to establish an abuse of discretion or otherwise overcome the presumption of reasonableness.

<u>CONCLUSION</u>

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE